UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETERSEN-DEAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOLARWORLD AMERICAS, INC., et al., <br><br> Defendants. | Case No. 3:17-cv-07326-WHO <br><br> **ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. Nos. 5, 22, 23, 30 |

**INTRODUCTION**

Plaintiff Petersen-Dean, Inc. ("PDI") filed this action in state court seeking a declaration that it has no liability to any defendants, SolarWorld Americas, Inc. ("SWA"), SolarWorld Americas LLC ("SWA LLC"), SolarWorld Industries America LP ("SWP"), and SolarWorld Industries Services LLC ("SWIS LLP"), under certain expired agreements related to the purchase and supply of solar panels. Defendants removed the action on the basis of diversity jurisdiction, asserting that SWA LLC, a California company, was fraudulently joined. After removal, they moved to compel arbitration or dismiss the action based on an existing arbitration agreement between the parties. PDI subsequently moved to remand, arguing that defendants had failed to meet their burden of establishing fraudulent joinder.

The evidence indicates that SWA LLC merged with its parent SWA and PDI has no independent claim against it. In addition, PDI's actions suggest that it has no true controversy with SWA LLC. The record also reveals an existing and valid arbitration agreement covering each and every dispute based on the commercial relationship between these parties. Accordingly, PDI's motion to remand is DENIED, and defendants' motion to compel arbitration is GRANTED.

**BACKGROUND**

On December 7, 2017, plaintiff Peterson-Dean, Inc. ("PDI") filed this action for declaratory relief against defendants SolarWorld Americas, Inc. ("SWA"), an Oregon corporation, SolarWorld Americas LLC ("SWA LLC"), a California limited liability company, SolarWorld Industries America LP ("SWP"), a Delaware corporation, and SolarWorld Industries Services LLC ("SWIS LLP"), a Delaware limited liability company seeking "to establish that PDI has no liability in any amount for any relief to any Defendant under the expired Guaranty Agreement between PDI and SWA, under the expired Supply Agreement of PD Solar, Inc. ("PDS"), or any other basis in law or equity." Compl. ¶ 2 (Dkt. No. 1-1 at 5).

The merits of this case center around PDI's obligation to pay for over $8 million in solar panels procured by PDS, PDI's wholly-owned subsidiary (and non-party), from defendant-supplier SWA. But the impetus for the present motions stems from the tortuous history between PDI, PDS, and SWA.

On June 8, 2017, SWA filed suit against PDI and PDS in the United States District Court, District of Oregon (the "Oregon Federal Case"). Geekie Decl. ¶ 3; *see* Complaint in the Oregon Federal Case ("SWA Complaint")(Geekie Decl., Ex. 1; Dkt. No. 38-1 at 82). SWA alleged that PDI was liable to SWA under a Guaranty Agreement from PDI to SWA, guaranteeing the obligations of PDS to SWA, which amounted to $8,247,184.89. Geekie Decl. ¶ 3. SWA specifically alleged that the outstanding and overdue invoices stemmed from 2017.[1] SWA Complaint ¶¶ 15–20. One week later, PDI and PDS filed a demand for arbitration against SWA before JAMS. JAMS Demand (Geekie Decl. ¶ 6; *id.*, Ex. 3; Dkt. No. 5-1 at 36).[2]

On the date their response was due, PDI and PDS filed a motion to compel arbitration and dismiss proceedings.[3] Mot. to Compel Arbitration in the Oregon Federal Case ("PDI Mot. to

---

[1] The SWA Complaint directly contradicts PDI's representation that "[o]n November 7, 2017, SWA revealed that the earliest allegedly overdue invoice at issue was dated January 24, 2017… ." PDI's Opp'n to Defs.' Mot. to Compel Arbitration ¶ 11.

[2] The JAMS arbitration demand does not name SWA LLC, SWP, or SWIS LLC.

[3] In the declaration in support of PDI's opposition to defendants' motion to compel arbitration here, counsel confusingly and misleadingly declares that "PDI and PDS filed a motion to compel

2

Compel")(Geekie Decl. ¶ 4; *id*., Ex. 2; Dkt. No. 5-1 at 20); *see also* Russo Decl. ¶ 4. They cited the arbitration clause in the 2016 Supply Agreement, as well as the arbitration clause contained in the "General Terms and Conditions of Sale" included in some of the invoices to argue that "SWA and Defendants [PDI and PDS] agreed in more than one fully executed agreement that they would arbitrate 'any dispute' related to their commercial business relationship." PDI Mot. to Compel at 14–15.

Thereafter, the parties agreed to arbitrate their entire dispute before Federal Arbitration, Inc. ("FedArb"), and SWA voluntarily dismissed the Oregon Federal Case. Geekie Decl. ¶ 8. On August 28, 2017, SWA filed an arbitration demand before FedArb seeking to recover from PDI under the Guaranty Agreement. Geekie Decl. ¶ 9; *see* FedArb Arbitration Demand (Geekie Decl., Ex. 4; Dkt. No. 5-1 at 61). PDI filed counterclaims against SWA, including one "for declaratory relief that [PDI] is not liable to [SWA] in any amount or for any relief under a contract of guaranty for [SWA's] defective and hazardous products that [PDI/PDS] rejected or of which [PDI/PDS] revoked acceptance." PDI's Counterclaims in FedArb (Geekie Decl. ¶ 10; *id*., Ex. 5; Dkt. No. 5-1 at 92).

In October 2017, the parties entered an Agreement to Arbitrate under FedArb Administration, with retired United States District Court Judge Vaughn R. Walker serving as arbitrator. Geekie Decl. ¶ 11; *see* Arbitration Agreement (Geekie Decl, Ex. 6; Dkt. No. 5-1 at 201).[4] Approximately three weeks before the scheduled arbitration, PDI suggested that the parties convert the arbitration into a mediation before Judge Walker. Geekie Decl. ¶ 12. SWA agreed. *Id*.; *see also* Russo Decl. ¶ 10.

On November 30, 2017, the parties mediated before Judge Walker, but they were unable to

---

arbitration of the dispute, encompassing any and all purportedly overdue invoices within the year range of 2014 – 2016." Russo Decl. ¶ 4; *see also* Opp'n to Defs.' Mot. to Compel Arbitration at 2 (Dkt. No. 18). But this appears to misrepresent the record, since the motion sought to compel SWA to arbitrate its claims against PDI and PDS, and those claims specifically and exclusively cited invoices from 2017.

[4] PDI again misrepresents the record when it contends that the parties "agreed to arbitrate the claims regarding purportedly overdue invoices within the year range of 2014 – 2016… ." Opp'n to Defs.' Mot. to Compel Arbitration ¶ 9.

3

settle their dispute. Geekie Decl. ¶ 12. Judge Walker thereafter recused himself from the arbitration. Russo Decl. ¶ 11; *see* Email From FedArb (*Id*., Ex. 5). After the parties were unable to agree on a new arbitrator, FedArb designated Judge Gary Fees to arbitrate the matter. 1/19/18 Email from FedArb (Reply to Mot. to Compel, Ex. A).[5]

PDI alleges that "SWA LLC, SWP, and SWIS are, on information and belief, all parties with interests in the 2016 Guaranty Agreement, or who may otherwise directly or indirectly claim against PDI for the amounts PDI is alleged to owe under the 2016 Guaranty Agreement, and who are joined in this action for full and total declaration of rights as to that instrument and whether any SolarWorld entity may make claims against PDI." Compl. ¶ 8.

**LEGAL STANDARD**

**I.  REMOVAL JURISDICTION**

Under 28 U.S.C. § 1441, "[a] defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Courts "strictly construe the removal statute against removal jurisdiction[,]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)(internal citations omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*.

Removal jurisdiction based on section 1332 "requires complete diversity of citizenship[,]" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001), and "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.' " *Morris*, 236 F.3d at 1067.

---

[5] PDI objected to this exhibit because it was not authenticated via an attorney declaration. *See* Objection to Reply Evidence (Dkt. No. 37). This is technically true, but I see no reason to doubt the authenticity of the email. SWA should submit a declaration within seven days of this Order establishing the authenticity of the email and PDI's objection will be overruled.

4

## II. ARBITRATION

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## DISCUSSION

I will first address PDI's motion to remand because I must have jurisdiction before I can address defendants' motion to dismiss or compel arbitration.

## I. REMOVAL JURISDICTION—FRAUDULENT JOINDER

PDI argues that removal was improper because defendant SWA LLC is a resident defendant and complete diversity is lacking. Mot. to Remand at 3 (Dkt. No. 23). Defendants insist that PDI fraudulently joined SWA LLC for the purpose of defeating diversity jurisdiction, when in actuality SWA LLC "is a defunct company that no longer conducts operations and is no longer in good standing in California." Geekie Decl. ¶ 16[6]; *see also* Notice of Removal at 4 (Dkt.

---

[6] PDI objects to this assertion, as well as counsel's statement that "[t]he only SolarWorld entity to ever do business with PDI and PDSI is SWA… ." Mot. to Remand at 9 (citing Geekie Decl. ISO NOR). In its Reply, PDI objects to additional statements contained in counsel's declaration in support of defendants' opposition. Reply to Mot. to Remand at 4–5 (Dkt. No. 40). PDI insists that counsel's assertions must be stricken because they are conclusory statements with no foundation, hearsay, argumentative, and speculative. *Id*. But Geekie attested to his personal knowledge of the matters set forth in his declarations, and I see no reason to strike the assertions. PDI's objections are OVERRULED.

5

1   No. 1); Opp'n to Mot. to Remand at 6 (Dkt. No. 38); Search Results on California Secretary of
2   State's Website (showing SolarWorld Americas LLC's status as "MERGED OUT")(Beecham
3   Decl. ¶ 3; *id.*, Ex. A; Dkt. No. 38-2).

"A district court may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." *Plute v. Roadway Package Sys., Inc.,* No. C-01-0353-SI, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citation omitted). Joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).

There is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1046 (9th Cir. 2009). Defendants must "show that the individuals joined in the action cannot be liable on any theory," *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998), and that "there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant," *Good v. Prudential Insurance Company of America,* No. C-98-0894-CW, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). "All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566–67 (9th Cir. 1992). *See also Albi v. Street & Smith Publ'ns,* 140 F.2d 310, 312 (9th Cir. 1944) ("[W]here it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court. A merely defective statement of the plaintiff's action does not warrant removal ... It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder cannot be said to be fraudulent").

At first glance, one might agree with PDI that SWA LLC is a proper party because it entered the 2014 agreements between the parties. *See* 2014 Supply Agreement (Milionis Decl. ¶

5; *id*., Ex. 1; Dkt. No. 30-3[under seal]);[7] 2014 Guaranty Agreement (Milionis Decl. ¶ 6; *id*., Ex. 2). But a closer look reveals several issues with the propriety of SWA LLC's joinder here. Turning first to the complaint, PDI does not cite the 2014 Supply Agreement or the 2014 Guaranty Agreement in its allegations. *See generally* Compl. Rather, it focuses exclusively on the 2016 Supply Agreement and the 2016 Guaranty Agreement. *Id*. SWA LLC was only a party to the 2014 agreements. In 2015 and 2016, SWA became signatory on the contracts. *See* 2015 Supply Agreement (Milionis Decl. ¶ 7; *id*., Ex. 3; Dkt. No. 30-5[under seal]); 2015 Guaranty Agreement (Milionis Decl. ¶ 8; *id*., Ex. 5); 2016 Supply Agreement (Milionis Decl. ¶ 7; *id*., Ex. 4; Dkt. No. 30-7[under seal]); 2016 Guaranty Agreement (Milionis Decl. ¶ 8; *id*., Ex. 6). The absence of any allegations relying on the 2014 agreements suggests that PDI may not have a valid claim against SWA LLC.[8]

Additionally, the reason for the substitution from SWA LLC to SWA becomes clear upon a deeper dive into the record. SWA LLC is no longer an operating entity in California because it merged with SWA. Beecham Decl. ¶ 3. PDI itself recognized this in its Motion to Compel

---

[7] PDI filed an administrative motion to seal portions of the supply agreements (exhibits 1, 3, and 4) and narrowly tailored its request to seal only the sealable materials in accordance with the rule. Administrative Mot. to Seal Exhibits ISO Mot. to Remand ¶ 4 (Dkt. No. 30); Goodnough Admin. Decl. ¶ 4; *see* Civil L. R. 79-5(d)(1)(B). But it submitted the entire exhibits under seal because SWA designated them confidential pursuant to the arbitration agreement. Goodnough Admin. Decl. ¶ 4. Since a motion to remand is potentially dispositive, *Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir. 2015), a party must establish compelling reasons to seal material. A party's interest in protecting trade secrets is considered sufficiently compelling to outweigh the public's interest in disclosure. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). PDI has established that the highlighted portions of exhibits 1, 3, and 4 constitute trade secrets because they contain pricing and volume data, callback information, and minimum monthly and annual projections. Goodnough Admin. Decl. ¶ 5. It also seeks to seal a non-party employee's email and telephone information. *Id*.

But defendants have yet to file a declaration establishing the basis for sealing the entirety of the exhibits. *See* Civil L. R. 79-5(e)(designating party must file a declaration within 4 days of the filing of the Administration Motion to File Under Seal). If they wish to establish compelling reasons for sealing any portions other than those identified by PDI, they should file a declaration within 7 days of this Order.

[8] PDI emphasizes that SWA LLC is listed as an insured on SWA's 2018 Certificate of Insurance, (Milionis Decl. ¶ 12; *id*., Ex. 8; Dkt. No. 26-8), and the assertion that SWA LLC was served prior to removal, Russo Decl., Ex. 2. Defendants never address these facts.

7

Arbitration in the Oregon Federal Action and asked the court to take judicial notice of the fact. *See* PDI's Mot. to Compel Arbitration at 3 n.3 ("Oregon and California public records record the merger of the LLC into the current entity, SWA.")(Dkt. No. 5-1 at 23). In California, "[u]pon merger … the separate existence of the disappearing corporations ceases… ." Cal. Corp. Code § 1107. "Under California law, a corporation that has been merged into another corporation cannot be sued." *Goodwin v. Bruggeman-Hatch*, 2014 WL 3881984, at *2 (D. Colo. Aug. 7, 2014); *see also Asher v. Pac. Power & Light Co.*, 249 F. Supp. 671, 677 (N.D. Cal. 1965)("A complete answer to the question of joining this defendant is that, subsequent to its merger with Pacific, Copco is not liable to suit in California unless the action was pending prior to the merger."). The merger between SWA LLC and SWA is reason enough to conclude that SWA LLC is not a proper party to this case, but it is not the only reason.

The conclusion that SWA LLC was fraudulently joined is reinforced by PDI's own actions over the course of this dispute. PDI never before asserted any claims against the other three entities. If PDI was truly concerned about the other entities' interest in the business relationship, one would think that PDI would have included them in its JAMS Arbitration Demand, or its FedArb Counterclaims. But it did neither of those things. To the contrary, it attempted to resolve its dispute with SWA over the course of six months before insisting that these other entities might have an interest needing resolution. This behavior supports SWA's contention that there is no actual dispute between PDI and SWA LLC.[9]

PDI joined SWA LLC for the purpose of destroying diversity jurisdiction. Because SWA LLC merged with its parent SWA, PDI cannot state a cause of action against it. Under these circumstances, I will disregard the non-diverse party and retain jurisdiction. *See, e.g.*, *Plute*, 141 F. Supp. 2d at 1008.

---

[9] Defendants also insist that no controversy exists with SWP and SWIS (the Delaware entities), but focuses its opposition on SWA LLC because that is the entity that would destroy diversity jurisdiction. Opp'n at 4 n.1.

8

## II. MOTION TO COMPEL ARBITRATION OR DISMISS

Defendants argue that "there has been a longstanding agreement to arbitrate" any dispute between the parties. Mot. to Compel Arbitration at 5 (Dkt. No. 5). They cite to PDI's acknowledgment and agreement to arbitrate on numerous occasions, including PDI's motion to compel arbitration in the Oregon Federal Case, PDI's demand for arbitration before JAMS,[10] and PDI's counterclaims in the FedArb arbitration. Those counterclaims included contract-based claims, as well as a claim for declaratory relief "covering each and every disputed issue by and between [the parties]... ." PDI's FedArd CounterClaims at 12 (Dkt. No. 5-1 at 105).

PDI counters that "[d]efendants erroneously point to expired contracts between PDI and SWA that do not encompass the substantive claims at issue, all of which *post-date* the expiration of the agreement to arbitrate." Opp'n at 1 (Dkt. No. 18). First, it claims that its prior motion to compel arbitration in the Oregon Federal Case pertained to overdue invoices within the year range 2014 – 2016. Opp'n ¶ 6 (citing Russo Decl. ¶ 4). Next, it asserts that the parties "agreed to arbitrate the claims regarding purportedly overdue invoices within the year range of 2014 – 2016... ." Opp'n ¶ 9 (citing FedArb Arbitration Agreement). Then it contends that SWA revealed for the first time in November 2017 that "the earliest allegedly overdue invoice at issue was dated January 24, 2017." Opp'n ¶ 11 (citing Russo Decl. ¶ 9). And last, it suggests that "[t]he parties' agreement had been to arbitrate before Judge Walker." Opp'n ¶ 14 (citing Arbitration Agreement ¶ 7).[11] But its position is untenable.

---

[10] Defendants emphasize their reliance on these representations when they voluntarily dismissed the Oregon Federal Action.

[11] Nothing in paragraph 7 of the Arbitration Agreement (entitled "Conflicts and Other Ethical Issues") suggests that the agreement to arbitrate was limited to an agreement to arbitrate before Judge Walker. They also cite the forum paragraph, which states that "[t]he parties agree that the arbitration agreed to herein shall take place at Law Office – Vaughn R. Walker... ." Arbitration Agreement ¶ 3. But this provision specifies a *location*, not an arbitrator. Reading the Agreement as a whole suggests that the parties agreed to submit their dispute to FedArb for arbitration, and not only to Judge Walker. *See* Arbitration Agreement ¶ 1 ("Agreement to Arbitrate under Federal Arbitration, Inc. Administration"); *id*. ¶ 6 ("In the event that an arbitrator appointed pursuant to this agreement cannot complete the arbitration due to death, incapacity, *or any other reason*, FedArb will assist the Parties in selecting a substitute arbitrator within thirty days, failing which FedArb will substitute another arbitrator of comparable experience and ability to complete the arbitration.")(emphasis added).

Each of those representations is misleading, at best. The dispute between these parties has always been limited to outstanding and overdue invoices from 2017. *See* Complaint in Oregon Federal Case (Dkt. No. 5-1 at 7). In fact, one need only look to PDI's motion to compel arbitration in the Oregon Federal Case to negate its arguments here. PDI now contends that all agreements between PDI and SWA expired before the 2017 invoices, i.e., all "outstanding invoices" post-date the 2014, 2015, and 2016 agreements, and there was no new agreement for 2017. Opp'n at 4–5. But it had previously argued that the parties had been negotiating agreements for 2017, and although those negotiations stalled, "at no time with respect to the 2017 [sic] did PDI agree to any change in the dispute resolution provision, or that disputes under that agreement should be resolved in the Oregon courts as opposed to arbitration in California previously agreed to in 2014 and 2016."[12] PDI's Mot. to Compel Arbitration In Oregon Federal Court ¶ 6 (Dkt. No. 5-1).

PDI then proceeded to cite "General Terms and Conditions" attached to some of the 2017 invoices received by PDS, which included a "Dispute Resolution" provision dictating that disputes left unresolved after settlement negotiations "shall be submitted for arbitration... ." *Id*. ¶ 8. It also asserted that invoices dated 2017 may have pertained to purchase orders issued in 2016 and therefore subject to the 2016 Supply Agreement. *Id*. at 12. It concluded, "SWA and [d]efendants [PDI and PDS] agreed in more than one fully executed agreement that they would arbitrate 'any dispute' related to their commercial business relationship." *Id*. at 14–15. In the absence of any *actual* change in facts (as opposed to PDI's false representations that the scope of the dispute has changed), this is an appropriate situation to judicially estop PDI "from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742,

---

[12] It recently reiterated this position in the FedArb proceedings when it stated,

> [T]here was no signed Supply Agreement for 2017. Parties began, but did not conclude, negotiations on a new agreement, and reached no agreement. At no time did PDI agree to any change in the dispute resolution provision, or that disputes under that agreement should be resolved in the Oregon courts as opposed to arbitration in California previously agreed.

PDI's Counterclaims in FedArb at 3 n.1 (Dkt. No. 5-1 at 96).

749-50 (2001).

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts consider three factors in determining whether judicial estoppel applies: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position[;] and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire*, 532 U.S. at 750-51).

PDI's position is "clearly inconsistent" as the scope of this dispute has been the same since SWA filed its complaint in the Oregon Federal Case. The Oregon court never ruled on PDI's motion, but PDI was at least successful in convincing SWA to voluntarily dismiss the action. This fact leads to consideration of the third factor because PDI would clearly "derive an unfair advantage" if allowed to pursue its inconsistent position.

But I need not rely on estoppel where there is a clear and unambiguous Agreement to Arbitrate. See Arbitration Agreement (Geekie Decl., Ex. 6; Dkt. No. 5-1 at 201). The parties signed the Agreement in October 2017, and it specifically provides an integration clause that the agreement and the FedArb rules "represent the entire understanding of the Parties" and "[n]o prior oral or written understanding shall be of any force or effect as to the matters covered in this agreement." Arbitration Agreement ¶ 13. The scope of the Agreement is not explicitly stated, but it necessarily encapsulates the claims of SWA's Demand (signed in August) and PDI's Counterclaims (signed in September). *See* SWA FedArb Demand for Arbitration (Geekie Decl., Ex. 4; Dkt. No. 5-1 at 61); PDI Counterclaims (Geekie Decl., Ex. 5; Dkt. No. 5-1 at 93). Although PDI's present claim for declaratory relief is not expressly listed as a counterclaim in the arbitration proceeding, the counterclaim sought to cover "each and every disputed issue by and between [the parties]... ." PDI Counterclaims ¶ 54. Moreover, PDI's present claim would necessarily have to be determined in deciding SWA's FedArb claim for payment of the outstanding and overdue

11

invoices.

PDI insists that the FedArb proceedings "have concluded[.]" Opp'n at 6. But this representation is belied by the fact that the FedArb administrator attempted to set a deadline of January 12, 2018 to select a new arbitrator to replace Judge Walker.[13] *See* 12/26/17 Email from FedArb to Counsel for Parties (Russo Decl., Ex. 7; Dkt. No. 20-8). PDI fails to offer any persuasive reason to conclude that the Arbitration Agreement is no longer in effect, notwithstanding its attempts to again convert the arbitration into a mediation and declare FedArb's neutrality tarred by various email communications. *See* 1/12/18 Letter from Russo to Geekie and related emails (Russo Decl. ¶ 18; *id*., Ex. 7; Dkt. No. 20-8).

Under these circumstances, I am "satisfied that the parties agreed to arbitrate *[the present] dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)(emphasis in original); *see also Saint Agnes Med. Ctr. v. PacifiCare of California*, 31 Cal. 4th 1187, 1199 (2003)("By entering into the arbitration agreement, the parties established their intent that disputes coming within the agreement's scope be determined by an arbitrator rather than a court; this contractual intent must be respected... ."). Accordingly, the parties are compelled to arbitrate. Defendants' motion is GRANTED.

## CONCLUSION

In accordance with the foregoing, PDI's motion to remand is DENIED. Defendants' motion to compel arbitration is GRANTED. Defendants shall also file the declaration described in footnote five within a week.

**IT IS SO ORDERED.**

Dated: March 5, 2018

William H. Orrick
United States District Judge

---

[13] In fact, FedArb notified the parties in a January 19th email that it had designated Judge Gary Fees to arbitrate this matter "[i]n light of the parties inability to mutually agree on an arbitrator... ." Reply, Ex. A.

12